IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

KELVIN MORGAN and
SUSAN MORGAN,

    Plaintiffs,

v.

3-B CATTLE COMPANY, INC.,

    Defendant.

Case No. 18-CV-371-GKF-FHM

## OPINION AND ORDER

Before the court is the Motion to Transfer [Doc. 17] filed by defendant 3-B Cattle Company, Inc. ("3-B"), which asks the court to transfer this case to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1404. For the reasons set forth below, the motion is granted.

### I. Background

The plaintiffs in this case are Kelvin Morgan and Susan Morgan, who reside and do business in Oklahoma. The defendant, 3-B, is a corporation organized in the State of Kansas.

In 2010, 3-B hired the Morgans to manage certain cattle and entered into an oral agreement with the Morgans for this purpose (the "Cattle Management Contract"). Specifically, the Morgans were to keep, graze, feed, and manage 3-B's cattle, and, in exchange, 3-B was to pay a per-head price, plus feed costs. In or around December 2016, a dispute arose regarding the number of 3-B's cattle in the Morgans' possession. 3-B alleges that at least 803 head of cattle went missing from the Morgans' care.

On July 10, 2017, the Morgans met with 3-B's representatives in Coffeyville, Kansas, to discuss the matter. 3-B contends that, during that meeting, the parties reached an agreement for the settlement of 3-B's claims for the lump-sum amount of $865,096.00 (the "Settlement

Contract"), which the Morgans acknowledged in a signed statement. According to 3-B, the Morgans paid $10,000.00 of the settlement amount that day, and orally represented they would pay the balance within a week. In contrast, the Morgans allege that 3-B coerced them into signing a dictated statement and paying the $10,000 against their will and without knowledge of their legal rights. According to the Morgans, the written statement was made under duress and is not a settlement agreement.

On April 18, 2018, counsel for 3-B sent a written demand letter to the Morgans on behalf of 3-B, seeking unpaid amounts due under the Settlement Contract. On May 18, 2018, counsel for the Morgans responded with a counteroffer. On June 20, 2018, 3-B's counsel sent a second letter to the Morgans, via their counsel, proposing a new counteroffer and enclosing a petition to be filed in the District Court of Montgomery County, Kansas. The letter informed the Morgans that 3-B would leave its offer "open for ten days through June 30, 2018, after which 3-B will file the enclosed Petition." [Doc. 17-1, pp. 4–17].

On June 29, 2018 (one day before the deadline specified in 3-B's letter), the Morgans filed the petition in this case against 3-B in the District Court of Nowata County, Oklahoma. The petition seeks a declaratory judgment and an accounting. 3-B received service of the Morgans' petition on July 10, 2018, and subsequently removed the action to this court.

Additionally, 3-B filed an action in Montgomery County, Kansas (the "Kansas Litigation"), on July 3, 2018—four days after the Morgans filed this action. The Morgans received personal service of 3-B's petition in the Kansas Litigation on July 8, 2018, and subsequently removed the Kansas Litigation to the United States District Court for the District of Kansas, where the case is captioned *3-B Cattle Company, Inc. v. Morgan, et al.*, Case No. 6:18-cv-01213-EFM-TJJ.

In its petition filed in the Kansas Litigation, 3-B seeks damages for breach of the Settlement Contract. In the alternative, 3-B asserts claims for breach of the Cattle Management Contract, fraud, fraud by silence, negligent misrepresentation, conversion, and replevin. In this action, 3-B has asserted the same causes of action as counterclaims.

At a scheduling conference held on August 29, 2018, this court granted 3-B's request to bifurcate the issue of whether the Settlement Contract is enforceable. [Doc. 15]. Currently, the scheduled cutoff for discovery regarding that issue is January 21, 2019. [Doc. 20]. 3-B filed the instant motion to transfer this case to the United States District Court for the District of Kansas on October, 5, 2018.

## II. Analysis

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district where it might have been brought for "the convenience of parties and witnesses" and "in the interest of justice." The Tenth Circuit has held that this section gives courts discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

In considering a motion to transfer under § 1404(a), courts weigh the following discretionary factors:

> [1] the plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler*, 928 F.2d at 1516). The parties have not meaningfully contested the third, fifth, six, and seventh factors, which the court finds to be neutral. The court addresses the remaining factors in turn.

**A. Plaintiff's Choice of Forum**

The first factor concerns a plaintiff's interest in preserving its chosen forum and, ordinarily, weighs heavily against transfer. *See Employers Mut. Cas. Co.*, 618 F.3d at 1167. In this case, application of the first factor implicates a principle recognized by the Tenth Circuit known as the "first-to-file rule." The Morgans argue that the court should deny 3-B's motion to transfer based on the first-to-file rule. In contrast, 3-B argues that the first-to-file rule does not apply here and that 3-B remains the "natural plaintiff," notwithstanding the procedural posture of this case.

The first-to-file rule generally provides that, when duplicative lawsuits are pending in separate federal courts, the first court in which jurisdiction attaches has priority to consider the case. *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982); *see generally Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1165 (N.D. Okla. 2010) (describing principles of the first-to-file rule). The purpose of the rule is to conserve judicial resources and avoid conflicting rulings.[1] *See Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, Case No. 98-4098, 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999) (unpublished). However, the presumption usually afforded the party who files first is not a rigid rule. The Tenth Circuit has characterized the first-to-file rule as a "general rule" and a "baseline," recognizing that "equitable

---

[1] "District courts within the Tenth Circuit have stated that 'the preference is for the court of first-filing to decide the application of the first to file rule.'" *Cherokee Nation*, 724 F. Supp. 2d at 1166 (quoting *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010)).

factors may bear on the inquiry." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, No. 17-4178, 2018 WL 6495113, at *4 (10th Cir. Dec. 11, 2018).

One exception to the first-to-file rule is the anticipatory-suit exception, which is intended to discourage races to the courthouse door. *See Alter v. F.D.I.C.*, 57 F. Supp. 3d 1325, 1331 (D. Utah 2014). "An improper anticipatory filing is one made under threat of a presumed adversary filing in a different district of the 'mirror image' of that suit." *Nacogdoches Oil & Gas, L.L.C. v. Leading Sols., Inc.*, No. 06-2551-CM, 2007 WL 2402723, at *2 (D. Kan. Aug. 17, 2007). "In contract disputes, this can occur when a breaching party, who expects to be sued, files a declaratory judgment action in a forum convenient to it in order to pre-empt an anticipated breach of contract action in another venue." *Swift Distribution, LLC v. Starin Mktg., Inc.*, No. 16-CV-00893-MSK-STV, 2016 WL 9344072, at *2 (D. Colo. Nov. 4, 2016). In an unpublished decision, *Buzas*, the Tenth Circuit affirmed a district court's application of the anticipatory-suit exception in a declaratory judgment action. 1999 WL 682883, at *2–3. The court held, "A district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." *Id.* at *3.

This is a classic case of an anticipatory lawsuit. The timing and defensive nature of this lawsuit belie any suggestion by the Morgans to the contrary. Counsel for 3-B sent counsel for the Morgans a demand letter that enclosed a draft copy of 3-B's petition and specified a deadline to respond. One day before the deadline, the Morgans filed this action—which is the mirror image of the Kansas Litigation. The Morgans seek declaratory relief and an accounting, whereas 3-B affirmatively seeks damages. Because this is an anticipatory suit, the court concludes that the first-to-file rule does not apply here.

5

Some courts have dismissed first-filed declaratory-judgment actions after determining that the anticipatory-suit exception applies. *See, e.g., Nacogdoches*, 2007 WL 2402723, at *3 (granting motion to dismiss); *Buzas*, 1999 WL 682883, at *1 (affirming order granting motion to dismiss). Here, however, 3-B has moved only to transfer, not to dismiss. Therefore, the court proceeds with the motion-to-transfer analysis. Because this is an anticipatory suit and 3-B is the natural plaintiff with affirmative claims, the usual transfer analysis is partially inverted: 3-B's choice of forum (Kansas) is entitled to deference and weighs in favor of transferring this case.

**B. Accessibility of Witnesses and Sources of Proof**

The second factor directs courts to consider the location of witnesses and other evidence. Here, 3-B asserts that this case involves "several Kansas witnesses," presumably referring to 3-B's agents, although 3-B does not specifically identify those witnesses. [Doc. 17, p. 11]. In contrast, the Morgans argue that the Northern District of Oklahoma is more convenient because "South Coffeyville, Oklahoma (where the Morgan's ranch is located) is more than an hour closer to Tulsa (70 miles) than it is to Wichita (140 miles)." [Doc. 18, p. 12]. The Morgans assert that "witnesses, including the Morgans, their present and former employees, their prior bookkeeper, 3-B's cattle buyer, the feed store, and the trucking companies" will all be more accessible in Oklahoma. [*Id.*].

The court notes that the Morgans have not shown that any such witnesses are unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary. *See Employers Mut. Cas. Co.*, 618 F.3d at 1169. Moreover, the testimony of most witnesses mentioned by the Morgans is unlikely to be material if the Settlement Contract is found to be enforceable. Nevertheless, the court finds that the second factor weighs against transfer, as Tulsa may be marginally more convenient than Wichita for several witnesses.

## C. Enforceability of Judgment

The Morgans argue that the enforceability of a judgment, if one is obtained against them, will be easier in Oklahoma. At most, this factor weighs slightly against transfer, as federal law allows the registration of a judgment from the District of Kansas within the Northern District of Oklahoma. *See* 28 U.S.C. § 1963.

## D. Advantage of Local Courts Determining Local Law

The eighth factor directs courts to consider the advantages of having a local court decide issues of local law. "When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." *Employers Mut. Cas. Co.*, 618 F.3d at 1170. 3-B contends that this dispute is primarily about the enforceability of the Settlement Contract, which the parties allegedly negotiated and entered in Kansas. The Morgans dispute the validity of the Settlement Contract, claiming that some form of duress or coercion prevented formation. 3-B argues—and the Morgans have not contested—that Kansas law governs the enforceability of the Settlement Contract under the doctrine of *lex loci contractus*. Because the Morgans' claims of duress and coercion may implicate subtle issues of Kansas law, the court finds that there is some advantage to having a court in Kansas decide those issues. The Morgans argue that Oklahoma law governs the Cattle Management Contract and that the eighth factor therefore favors proceeding in Oklahoma; however, the disputes related to the Cattle Management Contract appear to be primarily *factual* in nature, as opposed to involving complex or novel issues of law. On balance, the court finds that the eighth factor weighs in favor of transfer.

## E. Other Practical Considerations

The Morgans argue that "3-B's appearance and affirmative participation in this case and its undue delay in filing the [motion to transfer] weigh in favor of allowing this case to proceed." [Doc. 18, p. 15]. The court finds this argument unpersuasive, as it goes to how this case and the

7

Kansas Litigation should be consolidated (if at all), not whether this case should proceed in Oklahoma or Kansas. Furthermore, this case is still in a relatively early stage, and any discovery completed in this case is likely transferrable to the Kansas Litigation because they are mirror images of one another.

Having considered the various factors, the court finds that the equities weigh in favor of allowing 3-B to proceed in the forum of its choice, Kansas. 3-B is a Kansas corporation and the natural plaintiff with affirmative claims. The Morgans anticipatorily filed this suit in lieu of a response to a final demand letter, and the court declines to reward them for racing to the courthouse.

### III. Conclusion

WHEREFORE, the defendant's Motion to Transfer [Doc. 17] is granted.

IT IS SO ORDERED this 19th day of December, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE